**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DWAYNE BROOKS,** | Case No. 1:24-cv-1590-DAP |
| Plaintiffs, | Judge Dan Polster |
| -vs- | |
| **THE CITY OF CLEVELAND, ET AL.,** | **PLAINTIFF'S OPPOSITION TO THE CITY'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Defendants. | |

For the reasons set forth in the accompanying brief, the Court should deny Defendant the

City of Cleveland's Motion for Judgment on the Pleadings. (ECF No. 28 and 28-1).

/s/Elizabeth Bonham
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square, Suite 1900
Cleveland, OH  44113
T: 216-241-1430 / F: 216-621-0427
sarah@FGGfirm.com
elizabeth@FGGfirm.com

Jacqueline Greene (0092733)
FG+G
35 East 7th Street, Suite 201
Cincinnati, OH  45202
T: 513-572-4200 / F: 216-621-0427
 jacqueline@FGGfirm.com

*Counsel for Plaintiff Dwayne Brooks*

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

STATEMENT OF THE ISSUES ......................................................................................... i

MEMORANDUM IN OPPOSITION ................................................................................. 1

I.  Summary of the *Monell* Allegations ........................................................................ 1

II.  Standard of Review ................................................................................................... 3

    A.  The pleading standard: Rule 12(c), Rule 8, and Iqbal/Twombly .............................. 3

    B.  The pleading standard and *Monell* claims ............................................................ 4

    C.  The pleading standard and similar lawsuits in this Court ....................................... 5

III.  Law & Argument ...................................................................................................... 5

    A.  Elements of the *Monell* claim ............................................................................ 5

    B.  The *Monell* allegations generally ....................................................................... 6

    C.  First *Monell* theory: official policy ...................................................................... 8

        1.  Mr. Brooks pleaded the existence of an affirmative official policy ....................... 9

        2.  Mr. Brooks pleaded that the official policy was connected to the City ................. 10

        3.  Mr. Brooks pleaded causation .................................................................... 10

        4.  Mr. Brooks pleaded, but was not required to plead, deliberate indifference .......... 12

    D.  Second *Monell* theory: ratification .................................................................. 13

        1.  Mr. Brooks need not allege one particular decisionmaker to support a ratification theory ....................................................................................................... 14

        2.  Mr. Brooks adequately alleged ratification, including causation ........................ 15

    E.  Third *Monell* theory: failure to train and discipline ............................................ 15

        1.  Mr. Brooks sufficiently alleged a failure to train ........................................... 16

        2.  Mr. Brooks alleged deliberate indifference .................................................. 17

        3.  Mr. Brooks alleged causation ................................................................... 18

    F.  Fourth *Monell* theory: custom of tolerance to civil rights violations ...................... 18

    G.  Mr. Brooks did not plead his state law claims against Cleveland. ........................... 19

IV.  Conclusion ............................................................................................................. 20

**CERTIFICATE OF COMPLIANCE WITH LOC. R. 7.1** ................................................1

**CERTIFICATE OF SERVICE** ........................................................................................1

## STATEMENT OF THE ISSUES

In this §1983 case arising out of Dwayne Brooks's wrongful conviction and nearly 35-year imprisonment, Mr. Brooks sued the Cleveland police officers whose misconduct caused his conviction and the City of Cleveland whose official policies caused that misconduct. Defendant the City of Cleveland has filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), seeking to dismiss the Amended Complaint (ECF No. 5). In its Motion, the City contends it is not liable for its officers' actions under any theory of liability pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

In Opposition, Mr. Brooks submits that his highly particularized, 41-page Amended Complaint is more than sufficient to satisfy modern pleading standards. Mr. Brooks sufficiently pleaded that the City is liable under every theory of *Monell* liability. Indeed, multiple judges of this Court have already held that near-identical *Monell* pleadings in similar cases survived the City's Rule 12(c) challenge, denying near-identical motions by the City of Cleveland. The Sixth Circuit has also repeatedly held that similar claims against the City should move to trial. This Court should deny the City's Motion and permit Mr. Brooks to conduct discovery on his *Monell* claim.

**MEMORANDUM IN OPPOSITION**

The State of Ohio declared Dwayne Brooks a wrongfully imprisoned person as a matter of law after Cleveland police caused his false murder conviction in 1988. (Amended Complaint, ECF No. 5, ¶57.) To get to that declaration, Mr. Brooks pursued his innocence for decades. Finally, in 2021, after testimony from the original trial prosecutor and defense attorney confirming that Mr. Brooks's *Brady* rights were violated at trial, Mr. Brooks was granted a new trial. The Eighth District dismissed the state's appeal. The Cuyahoga County Common Pleas Court dismissed the charges against Mr. Brooks with prejudice. (¶¶54-56.)

Now that Mr. Brooks has filed this civil rights case seeking accountability from the City and its police officers who put him away, those Defendants move to dismiss on the pleadings. Mr. Brooks presented this Court with a 41-page, 164-paragraph Amended Complaint pleading facts that state courts have already vetted during postconviction litigation. Mr. Brooks also alleged facts in support of a *Monell* claim against the City which multiple judges of this Court have already held satisfy Rule 12 pleading standards in similar cases. The City now asks this Court to depart from *all* its precedent and find that Mr. Brooks failed to state his *Monell* claim. But Rule 12 does not impose an evidentiary burden upon plaintiffs; instead, the City's Motion tests only the pleadings. Here, Mr. Brooks pleaded in detail how Cleveland police officers violated his right to a fair trial and how their misconduct resulted from the City's decades-long policy of illegally securing similar wrongful convictions. This Court should deny the City's Motion (ECF No. 28).

## I.      Summary of the *Monell* Allegations

The City does not dispute that Mr. Brooks adequately pleaded how the individual police officer Defendants committed the underlying constitutional violations alleged in the Amended Complaint, therefore Mr. Brooks addresses only the *Monell*-specific allegations here. Mr. Brooks

pleaded that officer misconduct at issue came from a decades-long City of Cleveland policy under which CPD's police homicide detectives routinely used similar unlawful measures as those here to secure wrongful convictions. (Compl. ¶¶61-92, 157-164). Mr. Brooks alleged that the same specific types of misconduct that the police officer Defendants here used to cause his wrongful conviction—including *Brady* violations and causing criminal charges, arrests, and prosecution without probable cause—were habits so long entrenched in the division that they amounted to official rules. (¶¶63-69.) Mr. Brooks traced the history of this entrenchment from the 1960's through the early 2000s (¶¶70-82) and offered a non-exhaustive list of examples of similar men through the decades who were victims of these policies (¶¶65-66, 69). He alleged in detail how the at-issue policies functioned and how they pervaded CPD's culture, dictated its flawed training and supervision, and delegated massive authority to homicide detectives to ratify one another's misconduct and conceal it with a code of silence. (¶¶61-92, 157-164.) For each of the four available theories of municipal liability under the law, Mr. Brooks alleged each element. (*Id.*)

Mr. Brooks amply pleaded the facts supporting his *Monell* claim to satisfy Rule 12. In its Motion, the City asks more than what Rule 12 requires. The City's Motion asks the Court to impose a burden on Mr. Brooks to plead with an absurd level of particularity—for example, to list every single CPD-caused wrongful conviction over more than four decades, rather than the many examples he provides. (*See* ECF No. 28-1, PAGEID#314.) Instead, Mr. Brooks pleaded facts supporting the elements of his claims and put the City on notice of the same. Indeed, the City cannot say it lacks notice of the precise bases for *Monell* liability pleaded here. Defense counsel represents the City and its officers in multiple other §1983 wrongful conviction cases with similar pleadings, none of which have been dismissed and stayed dismissed. Indeed, this Court denied an almost identical motion by the City in a similar case just this month. This Court should find that

Mr. Brooks pleaded all his claims sufficiently to withstand dismissal under Rule 12(c).

## II.     Standard of Review

### A.  The pleading standard: Rule 12(c), Rule 8, and Iqbal/Twombly

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings on the basis that the pleadings are insufficient. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Federal Rule 8(a)(2) sets forth what is sufficient. A plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 596 (2007) and Rule 8. This standard does not demand "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, paragraph b of the syllabus (2009), quoting *Twombly*, 550 U.S.at 555. The standard does not even demand that the facts alleged "probabl[y]" occurred. *Iqbal,* 556 at 678. *Iqbal/Twombly* only demands that plaintiffs plead "sufficient fact[s]" "accepted as true" to state a "plausible" claim. *Iqbal,* 550 U.S. 678. The facts are viewed in the light most favorable to the Plaintiff. *Id.*

*Iqbal/Twombly* heightened the pleading standard in the federal rules from pure notice pleading to a plausibility standard, but it did not change the basic notice requirement of Rule 8. It did not impose upon plaintiffs an obligation to plead with great length or exacting particularity. To the contrary, Rule 8(d) still requires that complaints be "simple, concise, and direct." A pleading so complex or "length[y]" that it violates this rule risks dismissal just as does a pleading so thin it fails to put the opposing party on notice. *Kenzu v. Corizon,* 5 F.4th 646, 649-50 (6th Cir. 2021) (explaining origins and continuing purpose of Rule 8.) The Sixth Circuit recently reaffirmed that it is "inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of notice pleading." *Kenzu,* 5 F.4th at 650 (citation omitted). In other words, a complaint need not include an exhaustive list of every fact that plaintiff believes is necessary to prove their case. *See Ullery v.*

*Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020). Even in a case where "recovery [seems] very remote and unlikely," a complaint may survive a motion to dismiss. *Stratton v. Portfolio Recovery Assocs.*, 770 F.3d 443, 447 (6th Cir. 2014). The pleading standard is "not onerous." *B & G Towing, LLC v. City of Detroit, MI*, 828 F. App'x 263, 266 (6th Cir. 2020).

### B.  The pleading standard and *Monell* claims

In civil rights actions, the Court must "scrutinize such a dismissal with special care." *Lucarell v. McNair*, 453 F.2d 836, 838 (6th Cir. 1972); *see also Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 754 (6th Cir. 2023); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). A civil rights complaint is not required to "establish" entitlement to relief, nor is it required to convince the district court that sought-after relief is probable. *See Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) (where allegations embrace the facts needed to prove a claim, any weakness "will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)"); *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 868 (6th Cir. 2020) (same).

By contrast, the federal rules do not impose an especially heightened pleading standard on civil rights claims, including *Monell* claims. *See Lipman,* 74 F.3d 276, n.1 (pleading multiple instances of misconduct by various county officials sufficient to state a *Monell* pattern and practice claim); *Osberry v. Slusher,* 750 F. App'x 385, 398 (6th Cir. 2018) (*Monell* pleading in wrongful arrest case sufficient when it alleged six examples of pattern rather than simply alleging existence of unconstitutional policy without additional facts). There is no hard-and-fast numeric or temporal rule for what puts a City on notice of a pattern or culture sufficient to state a *Monell* claim; in fact, the United States Supreme Court has repeatedly recognized that even a single incident can be enough. *See, e.g., Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287 and n.8 (6th Cir. 2020) (explaining that requiring a pattern of multiple incidents to show deliberate indifference

is a "mistake that courts often make;" the real inquiry is whether the municipality is on notice); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390 (1989); *see also Gregory v. City of Louisville,* 444 F.3d 725, 754 (6th Cir. 2006) (similar *Monell* claims as here, in wrongful conviction case, survived summary judgment; discussing cases).

### C.  The pleading standard and similar lawsuits in this Court

Multiple judges of this Court have already determined, in wrongful conviction cases against the City of Cleveland, that near-identical *Monell* allegations to the one at bar could withstand near-identical Rule 12 motions made by the City. *See* Opinion & Order, *Buehner v. City of Cleveland, et al.,* N.D. Ohio No. 1:24-cv-1218, ECF No. 62, PAGEID#919-35, June 24, 2025 (Barker, J., denying in full Cleveland's motion for judgment on the pleadings); *Charles Jackson v. City of Cleveland,* 622 F. Supp. 3d, 636, 639 (N.D. Ohio 2022) (Calabrese, J., denying  in full Cleveland's motion for judgment on the pleadings); *Sailor v. City of Cleveland,* No. 1:20-cv-660, 2022 WL 405346 (N.D. Ohio Feb. 10, 2022), at *2 (granting motion to amend complaint to add allegations similar to those pleaded here because such allegations "could survive a Rule 12(b)(6) Motion"). Further, the Sixth Circuit has also held in multiple wrongful conviction cases that a jury should consider near-identical *Monell* claims against Cleveland. *Ricky Jackson v. City of Cleveland,* 925 F.3d 793, 828 (2019); *Estate of Isaiah Andrews v. City of Cleveland,* 112 F.4th 436, 444 (6th Cir. 2024). Nothing about the pleadings here, nor any argument the City makes, distinguishes the Motion before the Court from the City's near-identical motions or other arguments that failed in the above-cited precedent.

### III.    Law & Argument

### A.  Elements of the *Monell* claim

To state a claim under *Monell v. New York City Dep't of Soc. Srvs.,* 462 U.S. 658 (1978) Mr. Brooks must allege that the City of Cleveland police department's official policy and custom

of using unconstitutional police measures to secure wrongful convictions drove the officer misconduct here. Mr. Brooks may demonstrate such a policy in four general ways, and he has pleaded them all. He must allege that CPD had "(1) …an illegal official policy; (2) officials with final decision-making authority who ratified illegal actions; (3) …a policy of inadequate training [and] supervision; [and/or] (4) …a custom of tolerance [and] acquiescence of federal rights violations." *Charles Jackson,* 622 F. Supp. 3d at 39. The first two ways to allege a *Monell* policy "are based on the illegality of the … policy or practice" itself, and the latter two are based upon officers' "deliberate indifference" to civil rights violations. (*Id.*) For all the reasons explained below, Mr. Brooks has alleged every theory of *Monell* liability.

### B. The *Monell* allegations generally

Prior to walking through his pleadings as to each *Monell* theory, Mr. Brooks addresses two threshold problems with the City's Motion. First, the City's blasé cherry-picking of the factual allegations to downplay CPD's history of misconduct as well as what it did to Dwayne Brooks belies the historical record. (ECF No. 28-1, PAGEID#301-02.) At the time of Mr. Brooks's conviction and to this day, this City's police department has been the subject of federal investigation and control because of its biased policing. *See* U.S. Department of Justice, Findings Letter Re: Investigation of the Cleveland Division of Police, July 23, 2002 (discussing federal investigation into CPD misconduct spanning 1998-2004); U.S. Department of Justice, Findings Letter Re: Investigation of the Cleveland Division of Police, December 4, 2014 (discussing federal investigation into CPD misconduct resulting in still-active consent decree). Multiple third-party studies have documented the roots of CPD's culture of misconduct. (*E.g.,* Am. Compl. ¶¶71-75.) Cuyahoga County is home to the most wrongful convictions anywhere in Ohio and is top ten for wrongful convictions in the entire country, with most of these arising out of CPD. *See* University

6

of Michigan National Registry of Exonerations "Top Ten Counties," *available at* https://www.law.umich.edu/special/exoneration/Pages/Top-Ten-Counties.aspx.

Ohio trial courts have exonerated dozens of men whose wrongful convictions were caused at least in part by the Cleveland police between 1974 and the early 2000s. *See* University of Michigan National Registry of Exonerations "Exoneration Details," *available at* https://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx (listing, for example, Kwame Ajamu, Isaiah Andrews, David Ayers, Wiley Bridgeman, Dwayne Brooks, Michael Buehner, Anthony Michael Green, Charles Jackson, Ricky Jackson, Evin King, Ronald Larkins, Anthony Lemons, Kenny Phillips, Ru-El Sailor, George Seiber, Thomas Siller, Michael Sutton, and Octavius Williams). Still more CPD wrongful convictions have been recognized by other courts, and even more are not yet uncovered. *E.g., State v. Houston,* 8th Dist. No. CA-07-90780, 2009-Ohio-224, 2009 WL 147404; *State v. Tiedjen,* CR-89-238376-ZA. Mr. Brooks cited examples of this in his pleadings (*e.g.,* Am. Compl. ¶65) and in addition, the Court may take judicial notice of all this. *See Nosse v. Potter,* No. 23-3256, 2023 WL 8788874 at *2 (6th Cir. Dec. 19, 2023). The City's acknowledgement of a mere few of these other victims of its misconduct ignores that courts of law have already established the misconduct occurred both here and in prior similar cases. *See State of Ohio v. Dwayne Brooks,* Cuyahoga County No. CR-88-230828, Op. & J.E. Granting Motion for New Trial, Apr. 12, 2023 (McGinty, J.) (holding that the suppression of *Brady* evidence at Dwayne Brooks's trial violated his right to due process of law).

Second, as set forth above, multiple judges of this Court and in the Sixth Circuit have approved near-identical *Monell* allegations from exonerees suing the City and its officers for similar misconduct which occurred at various points from 1974 through 2007. *Buehner,* N.D. Ohio No. 1:24-cv-1218, ECF No. 62 (Barker, J., denying Cleveland's motion for judgment on the

pleadings as to similar allegations); *Charles Jackson,* 622 F. Supp. 3d. at 639 (Calabrese, J., denying Cleveland's motion for judgment on the pleadings as to similar allegations); *see also Sailor,* 2022 WL 405346 at *2 (Boyko, J., granting motion to amend because similar allegations "could survive a Rule 12(b)(6) Motion"); *Ricky Jackson,* 925 F.3d at 828 (after discovery, similar *Monell* claims were triable); *Estate of Isaiah Andrews,* 112 F.4th at 444 (same). The City in no way distinguishes the case at bar from these other cases. It does not even attempt to do so. This Court should follow *Buehner* and *Jackson* and find that Mr. Brooks's allegations survive. *See Charles Jackson,* 622 F. Supp. at 644 ("the complaint contains extensive detailed allegations…"; "in the present procedural posture Plaintiff enjoys the benefit of an inference that the custom of tolerating…violations of constitutional rights was so firmly entrenched that it persisted….").

With this background in mind, Mr. Brooks now addresses the City's specific arguments directed at how he pleaded each *Monell* theory.

### C.  First *Monell* theory: official policy

Mr. Brooks sufficiently alleged that CPD's official policy caused the violations of his rights at issue in this case. In other words, he alleged that CPD had a "formal rule[] or understanding[]" that "establish[ed] fixed plans of action to be followed under similar circumstances consistently and over time" and that this formal understanding caused the misconduct here. *See Ricky Jackson,* 925 F.3d at 829; *Wright v. City of Euclid,* 962 F.3d 852, 880 (6th Cir. 2020). Specifically, Mr. Brooks alleged that the City, through its police homicide division, had an unwritten "decades-long official policy…in which police regularly used unconstitutional measures to secure wrongful convictions." (Am. Compl. ¶63.) Mr. Brooks explained that these "measures" specifically included, among other things, "withholding, suppressing, or destroying exculpatory evidence. fabricating evidence…engaging in unduly suggestive identification and lineup procedures," and explained how these violations were the same as those done to Mr. Brooks. (*Id.; see also id.* ¶¶69,

85, 87, 91, 161.) Mr. Brooks explained that the at-issue official policy was in part written (¶65(a-b)), citing *Ricky Jackson,* recognizing written *Brady* violation policy) but largely unwritten, though having the force of a rule.  (¶¶65, 67, 69, 85, 161.)

The City's argument in support of dismissal on this theory is that there simply "was no unconstitutional official policy," and that Mr. Brooks failed to plead the elements required to allege an official policy. (ECF No. 28-1, PAGEID#304.) This is not so.

### 1.  Mr. Brooks pleaded the existence of an affirmative official policy

First, the City argues that Mr. Brooks "failed to identify" a "specific official policy" at all. (*Id.* PAGEID#304-05.) In making this argument, the City does not discuss any allegations in the operative Complaint. Instead, the City conclusorily argues that the Amended Complaint "makes no references to acts by a legislative body, formal rules or understandings, or fixed plans of action to be followed." (*Id.*) This is inaccurate. As set forth above, Mr. Brooks specifically pleaded that "[t]he City, through CDP, maintained a decades-long official policy" under which "police regularly used unconstitutional measures to secure wrongful convictions." (ECF No. 5, ¶63). Mr. Brooks described those measures in detail and alleged that their use was so "widespread" and "well-settled as to constitute de-facto policy." (*Id.* ¶¶85, 161.) Mr. Brooks agrees that he did not allege this policy stemmed from a legislative enactment, as is the fact pattern in some *Monell* litigation, but rather he alleged an official policy in the form of a written and unwritten rule. As the *Jackson* court held and the *Buehner* court recently reaffirmed, "formal rules or understandings—*often but not always committed to writing*" are "sufficient to demonstrate official policy under the first *Monell* theory." *Buehner,* 1:23-cv-1218 at PAGEID#924, citing *Jackson,* 925 F.3d at 829 (emphasis original). Mr. Brooks has so alleged here.

### 2.   Mr. Brooks pleaded that the official policy was connected to the City

Second, the City argues that Mr. Brooks "failed to connect an official policy to Cleveland." (ECF No. 28-1, PAGEID#306.) Again, in support of this argument, the City fails to discuss the allegations in the Amended Complaint that connect the unlawful policy to the City. The City's only argument seems to be that, in general, Mr. Brooks's allegations refer to historical records in addition to prior cases and other facts establishing the City's policy. (*Id.*) The City cites no law for the proposition that citations to historical records cannot be used in part to allege a historic policy of misconduct, and Plaintiff is aware of no such law. Further, the City ignores Mr. Brooks's ample allegations connecting the at-issue official policy to the City of Cleveland, its police department, and its final policy makers. (*See, e.g.,* Am. Compl., ECF No. 5 at ⁋62 ("The police misconduct alleged in this Complaint was undertaken pursuant to the City of Cleveland's official policies…"); ⁋⁋63-92 (citing to findings in caselaw, historical records, prior testimony, and other facts all as allegations of the City of Cleveland's longstanding policy of using unconstitutional measures to secure wrongful convictions);  ⁋⁋158-164 (connecting the elements of the *Monell* claim to the City)); *see also Buehner,* 1:23-cv-1218 at PAGEID#925 (finding, in construing similar pleadings, that the plaintiff "has alleged that an official policy exists, and his allegations of previous similar misconduct simply demonstrate examples of that official policy in use.")

### 3.   Mr. Brooks pleaded causation

Third, the City argues that Mr. Brooks failed to allege causation—that the City's at-issue official policy caused the misconduct that violated Mr. Brooks's rights. Again, the City makes no meaningful engagement with any of the detailed 164 paragraphs of allegations in the Amended Complaint. (ECF No. 28-1, PAGEID#306-07). Instead, the City argues broadly that Mr. Brooks failed to allege that the officer Defendants followed the City's policies when they violated Mr.

Brooks's rights. (*Id.*) The City also suggests without meaningfully arguing that the Complaint insufficiently distinguishes which officer committed which specific harms, and therefore cannot sufficiently allege that the City's policy caused *any* harms at all (a "group pleading" defect). (*Id.*)

Neither argument is persuasive. As to pleading causation itself, though the City ignores these allegations, Mr. Brooks repeatedly alleged that the City's policies were the moving force behind the officer misconduct here as required by *Monell.* (*See, e.g.,* ¶¶87, 163, and PAGEID#71; *see also, e.g.* ¶61 (alleging, in section of Complaint addressing the police officer Defendants, that these "Defendants' misconduct was not rogue. To the contrary, it was done pursuant to the official policy and custom of the City of Cleveland.")

As to "group pleading," that is not a defect in this Complaint. It is true that plaintiffs must allege the "personal involvement" of each individual defendant when pleading §1983 violations. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). However, this standard is not rigid. Where a small group of officers committed wrongdoing together, plaintiffs need not plead which officer committed precisely which *part* of a deprivation of rights. *See Fazica v. Jordan,* 926 F.3d 283, 290-292 (6th Cir. 2019) (collecting cases) (even at the summary judgment stage, "where a plaintiff who was unable to identify clearly which officers committed specific acts during the incident produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence, the plaintiff's claim against that defendant may survive summary judgment"); *see also Binay v. Bettendorf,* 601 F.3d 640, 650-651 (6th Cir. 2010) (similar); *Buehner* at PAGEID#861-65 (collecting cases, rejecting the City's almost identical group pleading argument on similar facts).

In any event, however, Mr. Brooks *has* identified the roles of the individual officer Defendants here sufficiently to put them on notice of the claims against them, and those officers

did not argue otherwise in their own Motion (ECF Nos. 29 and 29-1). In his Amended Complaint, Mr. Brooks describes each officer's role in the investigation against him. The lead homicide detectives over the investigation against him were Kovacic, Kunz, and Cudo; additional detectives working on the file were Bornfield and Murphy; and supervising defendants approving their misbehavior were James Kaminski, Fransen, Tolliver, and James. (ECF No. 5, ¶¶5-6, 10-11). These officers all worked in tandem to develop the false case against Mr. Brooks, their names all appearing as authors or participants on specific at-issue police reports, demonstrating their personal involvement. (*Id.*) Mr. Brooks alleged, to the extent possible before discovery, specific facts relating to each of their roles. (*Id.,* at, *e.g.,* ¶¶27(a)-(d), 36(a)-(d), 45). Ultimately, as set forth above, Mr. Brooks alleged in detail how the City's longstanding policy of homicide detectives using *Brady* violations and other unlawful measures to secure wrongful convictions caused the officers' similar conduct here. (*Id., e.g.,* ¶¶62-63, 159, 163).

### 4.  Mr. Brooks pleaded, but was not required to plead, deliberate indifference

Fourth and finally related to the official policy theory, the City argues that Mr. Brooks failed to allege that the City's official policy was enacted with "deliberate indifference" to its predictable consequences—which the City argues is a necessary element in pleading this *Monell* theory. This is not correct as a matter of law. *See Buehner,* 1:23-cv-1218, PAGEID#924, n.104 (citing cases and finding the "City's assertion" that "deliberate indifference" is required when pleading a *Monell* official policy "misconstrues the case law."); *see also Charles Jackson,* 622 F. Supp. 3d at 39. Pleading a *Monell* theory based upon an affirmative official policy does not require a showing of deliberate indifference. *Id.; see also Franklin v. Franklin Cty., Ky.,* 115 F.4th 461, 470 (2024) (citing cases). However, even if the City were correct, Mr. Brooks has pleaded that the City maintained its policy with deliberate indifference to the problems the City was long on notice

that its policy was causing over decades. (*E.g.,* ¶¶74, 85, 161, 162.)

For all these reasons, the Court should deny the City's Motion and find that Mr. Brooks has sufficiently alleged that an official policy of the City of Cleveland was the moving force behind the officer misconduct here, permitting him discovery on this *Monell* theory.

### D.  Second *Monell* theory: ratification

Mr. Brooks sufficiently alleged that CPD officials with final decision-making authority ratified the officer misconduct here. He did so using two theories that are available to state a ratification-based *Monell* claim. First, Mr. Brooks alleged that individual CPD homicide detectives were delegated "massive authority" to act without review and thus possessed *de facto* final authority to approve one another's unconstitutional policing measures and did so. Therefore their "ratification" is therefore "chargeable to" Cleveland. *City of Ct. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986); (*see* Am. Compl. ¶¶75, 87 (alleging delegation).). In addition, Mr. Brooks alleged that the City "ratified the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright,* 962 F.3d at 882 (citing *Leach v. Shelby Cty.*, 891 F.2d 1241, 1247–48 (6th Cir. 1990).) Specifically, Mr. Brooks alleged that CPD officers perpetuated a code of silence under which they committed and observed, but tacitly agreed never to investigate or report, all the kinds of misconduct that went on here. (Compl. ¶¶. (alle81-85, 91, 160 (alleging code of silence).) Mr. Brooks alleged that CPD officers all the way up to the highest decision makers were on notice of the need to investigate and remedy this unconstitutional conduct and failed to ever do so, knowing wrongful convictions would continue to result. (*Id.*) Mr. Brooks alleged that the Defendant officers' violations against him were one such result.

The City's arguments in support of dismissal on the ratification theory are that Mr. Brooks failed to suitably identify *which* final policy maker for the City ratified the at-issue conduct, and

simply that "no ratification that caused harm" even happened. (ECF No. 28-1, PAGEID#308-09.) Both arguments are unpersuasive.

### 1. Mr. Brooks need not allege one particular decisionmaker to support a ratification theory

The City argues that because Mr. Brooks did not name one singular City employee who ratified the decades of misconduct at issue here, he cannot state a ratification theory of *Monell* liability. This is not the law. First of all, a "plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 882 (6th Cir. 2020); *see also Davis v. City of Columbus, Ohio*, 2021 WL 4399755, at *6 (S.D. Ohio Sept. 27, 2021). "The Sixth Circuit has held that 'official toleration, … concealment … [and] a complete failure to initiate and conduct any meaningful investigation,' into complaints of constitutional violations may establish municipal liability." *Knowlton v. Richland County, Ohio*, 2017 WL 5649597, at *13 (N.D. Ohio Apr. 5, 2017) (citing *Ragsdale v. Sidoti*, 2015 WL 10986350, at *5 (N.D. Ohio June 5, 2015)) (quoting *Marchese v. Lucas*, 758 F.2d 181, 187–88 (6th Cir. 1985)). In addition to this, "the Sixth Circuit recognizes that, in certain circumstances, police officers may have final, unreviewable authority to act, effectively, as a final policymaker unconstrained by the official policies of superiors. *Charles Jackson v. City of Cleveland,* 622 F. Supp. 3d 636, 643 (citing *Monistere v. City of Memphis*, 115 F. App'x 845, 852 (6th Cir. 2004).)

Here, Mr. Brooks alleged his ratification theory in both the above-described recognized ways. He alleged that "the City and CPD have a [] entrenched history of failing to supervise, investigate, and discipline allegations of officer misconduct like that at issue here" (ECF No. 5 at ⁋76); that CDP maintained for decades a code of silence under which officers, decisionmakers, and supervisors each possessed authority to and did conceal one another's misconduct (⁋⁋82-84);

14

and that CDP officers were delegated "massive authority" wherein they had the power to approve each other's misconduct (¶¶75, 87). As with Mr. Brooks's other *Monell* theories, this Court has repeatedly found that similar allegations were sufficient to state a *Monell* claim based upon ratification. *Charles Jackson,* 622 F.Supp.3d at 643; *Buehner,* N.D. Ohio No. 1:24-cv-1218, at PAGEID#928. The Court should follow suit here.

### 2. Mr. Brooks adequately alleged ratification, including causation

The City also argues that Mr. Brooks failed to allege causation—that the ratification he described was the moving force behind the violations of his rights. (ECF No. 28-1, PAGEID#309). However, as explained above and as the City itself acknowledges (*id.*), Mr. Brooks alleged in detail how the ratification at issue here occurred, and by whom, and that it was the moving force behind the individual officers' unconstitutional conduct. Mr. Brooks need not and cannot do more without discovery. *See Charles Jackson,* 622 F. Supp.3d. at 644. The Court should permit the ratification theory to proceed.

### E. Third *Monell* theory: failure to train and discipline

Mr. Brooks sufficiently alleged that CPD failed to adequately train or discipline its officers to prohibit the officer misconduct that happened to Mr. Brooks, and was deliberately indifferent to the risks posed by that failure. *See Ricky Jackson,* 925 F.3d at 836, citing *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012). Specifically, Mr. Brooks alleged that CPD policymakers "knew…there was a need to implement policies, train, and supervise police officers" to remedy known police misconduct, and were deliberately indifferent in their decision not to do so. (Am. Compl. ¶¶85-87.) Mr. Brooks alleged that his own wrongful conviction and others like his were the "predictable consequence" of the City's failure to train its officers on their constitutional obligations to preserve *Brady* material and not to initiate or continue arrests or

prosecutions without probable cause. (*Id.* at ¶¶87, 89, 160-164.) Mr. Brooks alleged at length the history of, nature of, and results of these failures.

The City's arguments in support of dismissal on the failure to train theory are, again, inaccurate assertions that Mr. Brooks's allegations are simply not "plausible" or "relevant." (ECF No. 28-1, PAGEID#310.) The City's arguments are unavailing.

### 1. Mr. Brooks sufficiently alleged a failure to train

The City argues that Mr. Brooks "failed to allege that any training was inadequate" and that "there are no plausible or relevant allegations about training" (ECF No. 28-1, PAGEID#310). This ignores the text of the Amended Complaint. To the contrary, as explained above, Mr. Brooks alleged in detail how the CPD training regime—particularly in the homicide division—failed to educate officers including the individual Defendants sufficiently to stop a decades-long pattern of *Brady* violations and other misconduct. (ECF No. 5, ¶¶76-77, 82-84, 86, 159-60.) He described how CPD failures of training and oversight were passed down between specific supervising officers within the homicide division. (*Id.* at ¶66; *see also* ¶81.) Mr. Brooks described how the persistent failure to train functioned in tandem with a documented police code of silence under which officers were never disciplined for unconstitutional misconduct and knew they could pursue wrongful convictions with impunity. (¶¶82-86.) Mr. Brooks even cited specific exemplary evidence and prior cases demonstrating how the City was on notice of the defects in its training program and the outcomes of its code of silence but failed to remedy the same. (¶¶81-82, 71-75.) Courts have held that this same theory in this context against this department should be tried to a jury, and that similar pleadings were sufficient to state this claim. *Ricky Jackson,* 925 F.3d at 828; *Charles Jackson,* 622 F. Supp.3d at 644; *see also Buehner,* 1:24-cv-1218 PAGEID#929-31. The Court should likewise permit the failure to train or supervise theory to proceed here.

### 2.  Mr. Brooks alleged deliberate indifference

The City next argues that Mr. Brooks insufficiently pleaded the City's deliberate indifference to the consequences of its failure to train or supervise its officers (ECF No. 28-1, PAGEID#311). However, Mr. Brooks sufficiently alleged deliberate indifference. The City does not argue that Mr. Brooks literally failed to allege that the City was deliberately indifferent, because Mr. Brooks plainly did so (*e.g.,* at Amended Complaint ¶¶74, 85, 161, 162; *see also* ¶85). Instead, the City argues that to show deliberate indifference in this context, Mr. Brooks must allege a pattern of misconduct putting the City on notice that its defective training and supervision regime were unconstitutional. (ECF No. 28-1, PAGEID#311.) But this is not the only way to demonstrate deliberate indifference, and even the City's cases make this clear. *Farris v. Oakland Cty., Mich.,* 96 F.4th 956, 969 (6th Cir. 2024) (explaining multiple ways to show deliberate indifference); *Stucker v. Louisville Metro Gov't.,* No. 23-5214, 2024 WL 2135407, at *11 (6th Cir. May 13, 2024) (considering multiple theories of deliberate indifference and remanding for further consideration of same). Instead, Mr. Brooks may allege, as he did, that the training defects were obvious, or that the constitutional violations that resulted were foreseeable. *See, e.g., Brown v. Shaner,* 172 F.3d 927, 931 (6th Cir. 1999) (succinctly explaining this principle).

However, even accepting the City's premise, Mr. Brooks amply pleaded that a persistent pattern of misconduct put the City on notice of its faulty training and supervision—in addition to third party reports and analyses and the patently obvious shortcomings in the training regime that put the City on notice. To avoid redundancy, Mr. Brooks addresses his pattern and practice allegations below in the section of this brief discussing the *Monell* custom theory. In any event, as all other courts considering this question have held, Mr. Brooks adequately alleged his failure to

train theory including the element of deliberate indifference. *See, e.g., Ricky Jackson v. City of Cleveland,* 925 F. 3d 793, 836 (6th Cir. 2019).

### 3.  Mr. Brooks alleged causation

On the theory of failure to train, the City last argues that there are "no allegations that satisfy causality" because Mr. Brooks was required to specifically plead how, if CPD *had* trained its officers properly, they would have acted right. (ECF No. 28-1, PAGEID#312). The City cites no controlling law for the proposition that the pleading burden is so high, and it is not. Mr. Brooks submits that it is not possible to read his allegations and conclude that police officers committing obvious *Brady* violations for decades could have resulted from mere mistakes having nothing to do with their training or supervision. Mr. Brooks repeatedly alleged that the City's failure to train and supervise its officers over many years, passed down through specific individuals, entrenched as part of a known departmental custom caused the same outcome for Mr. Brooks as it has for so many: a wrongful conviction. (*See, e.g.,* Am. Compl. ⁋⁋ 58, 66, 73-75, 82, 84, 89, 91, 161.) For all these reasons, the Court should permit discovery on the failure to train theory.

### F.  Fourth *Monell* theory: custom of tolerance to civil rights violations

Finally, Mr. Brooks sufficiently alleged that CPD had a custom of tolerance to civil rights violations leading to wrongful convictions that was so settled for so many years that it had the force of law. Mr. Brooks further alleged that CPD was on notice of, but deliberately indifferent to, the misconduct that would result from the entrenched culture of the police homicide division, and that it caused the wrongdoing here. *See Gregory,* 444 F.3d 725, 756 (6th Cir. 2006).  Specifically, Mr. Brooks described in detail how the City's decades-long history of similar misconduct accumulated to cause his wrongful conviction and persisted even afterword, affecting many other victims, examples of which are set forth in the Complaint. (Am. Compl. ⁋⁋65-66, 69.)

In addition to repeating the same unavailing arguments as above (failure to plead notice, deliberate indifference, or causation)—which fail here for the same reasons as above—the City argues in support of dismissal of the custom theory that Mr. Brooks failed to allege *enough* examples of prior similar misconduct to state a custom claim. (ECF No. 28-1, PAGEID#313-16) Courts have already found the opposite on similar pleadings. *See Charles Jackson,* 622 F. Supp at 644; *Buehner,* 1:24-cv-1218, ECF No. 62, PAGEID#932-34 ("the Court rejects the City's arguments as to a required numeric threshold of incidents or recency thereof"); *cf. Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (in other circumstances, *Monell* claim failed because it did not plead "*any* prior incidents to support the City of Cleveland's adoption of such an informal practice or custom.") Neither the Sixth Circuit nor any court has determined that there is a numeric threshold of prior similar conduct under which a *Monell* custom claim falls short of Rule 12. Indeed, pleading similar instances is a common way to demonstrate a custom, but not the only way. *See Ouza,* 969 F.3d 265 at 287 (The foreseeability of the constitutional violation, rather than pointing to prior incidents, establishes an inference of deliberate indifference.) Here, Mr. Brooks offers over a dozen examples of prior similar conduct from the same department with the same results. (ECF No. 5, ¶¶ 65-66, 82). More importantly, Mr. Brooks has alleged in detail how the entrenched culture of CDP across many decades produced a custom of tolerance to civil rights violations which caused his wrongful conviction. This is more than adequate to state a claim. As other courts have, this Court should allow the custom theory to proceed to discovery.

### G. Mr. Brooks did not plead his state law claims against Cleveland.

Finally, the Court should disregard the City's arguments that it is immune or otherwise raises defenses as to Mr. Brooks's state law claims (ECF No. 28-1, PAGEID#316-17) because he did not bring his state law claims against the City. Mr. Brooks made one claim against the City, as discussed *supra,* a *Monell* claim premised upon the underlying violations of his federal

constitutional rights. Without taking a position on whether Ohio political subdivision immunity could protect the City from tort claims such as Mr. Brooks brought here, or whether the City is subject to suit under R.C. § 2307.60, or any other arguments the City raises, Mr. Brooks asks the Court to construe the Amended Complaint as not raising those causes of action against the City. Mr. Brooks only maintains a *Monell* claim against the City. Therefore, the Court should disregard this part of the City's Motion (PAGEID#316-18). Similarly, Mr. Brooks clarifies that he does not seek punitives against the City, but rather only as to the individual officer Defendants, so the Court should disregard the part of the City's Motion regarding punitive damages as well. (*Id.*) In clarifying his position against the City as to the state law claims, Mr. Brooks preserves all his arguments against the individual police officer Defendants on those claims, which he addresses in his separate opposition to their own Motion.

## IV.    Conclusion

For the reasons set forth above, the Court should deny the City's Motion (ECF No. 28). This Court has rejected the City's similar arguments in similar cases time and again. The City has long been on notice of the nature of the *Monell* claims against it, both through these pleadings and in the multiple other similar lawsuits it is facing and has previously faced for its similar misconduct. The pleadings are not the place to try this case. Rejecting this claim on the pleadings based upon any of the City's arguments would undermine the pleading standard and would contravene this Court's preference for resolving cases on their merits. *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). The Court should permit Mr. Brooks to conduct discovery to prove up his *Monell* allegations as he seeks justice for his nearly 35 years of wrongful imprisonment.

Respectfully submitted,

*/s/Elizabeth Bonham*
FG+G

20

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
50 Public Square, Suite 1900
Cleveland, OH  44113
T: 216-241-1430 / F: 216-621-0427
*sarah@FGGfirm.com*
*elizabeth@FGGfirm.com*

Jacqueline Greene (0092733)
FG+G
35 East 7th Street, Suite 201
Cincinnati, OH  45202
T: 513-572-4200 / F: 216-621-0427
 *jacqueline@FGGfirm.com*

*Counsel for Plaintiff Dwayne Brooks*

**CERTIFICATE OF COMPLIANCE WITH LOC. R. 7.1**

I certify that this memorandum adheres to the page limitations set forth in Northern District of Ohio Local Rule 7.1 as modified by the Court's orders.

*/s/ Elizabeth Bonham*
*One of the Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Elizabeth Bonham*
*One of the Attorneys for Plaintiff*